1  BENJAMIN B. WAGNER
   United States Attorney
2  WILLIAM S. WONG
   MICHAEL D. ANDERSON
3  Assistant U.S. Attorneys
   501 I Street, Suite 10-100
4  Sacramento, California 95814
   Telephone: (916) 554-2751



IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 2:12-cr-0207 LKK |
|---|---|---|
| Plaintiff, | ) | PLEA AGREEMENT FOR DEFENDANT THOMAS LU |
| v. | ) | |
| THOMAS LU, | ) | |
| Defendants. | ) | |

## I.

## INTRODUCTION

**A. Scope of Agreement:** Pursuant to Rule 11(c)(1) of the Federal Rules of Criminal Procedure, the defendant THOMAS LU ("defendant") will plead guilty to Count Seven of the Indictment in this case. The defendant will be entering a guilty plea to the specific charge set forth below:

COUNT SEVEN:  18 U.S.C. § 922(a)(1)(A) - Engaging in the Business of Dealing in Firearms Without a License.

**B. Court Not a Party:** The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any

1

recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.  If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this Plea Agreement.  The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

**A.   Guilty Plea**: The defendant will plead guilty to Count Seven, of the Indictment.  The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis attached to this Plea Agreement as Exhibit A are sufficient to establish a violation of 18 U.S.C. § 922(a)(1)(A).

**B.   Special Assessment**:  The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this Plea Agreement is voidable by the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**C.   Agreement to Cooperate**:  The defendant agrees to cooperate

1  fully with the government and any other federal, state, or local law
2  enforcement agency, as directed by the government.  As used in this
3  plea agreement, "cooperation" requires the defendant: (1) to respond
4  truthfully and completely to all questions, whether in interviews, in
5  correspondence, telephone conversations, before a grand jury, or at
6  any trial or other court proceeding; (2) to attend all meetings,
7  grand jury sessions, trials, and other proceedings at which the
8  defendant's presence is requested by the government or compelled by
9  subpoena or court order; (3) to produce voluntarily any and all
10 documents, records, or other tangible evidence requested by the
11 government; (4) not to participate in any criminal activity while
12 cooperating with the government; and (5) to disclose to the
13 government the existence and status of all money, property, or
14 assets, of any kind, derived from or acquired as a result of, or used
15 to facilitate the commission of, the defendant's illegal activities
16 or the illegal activities of any conspirators.
17       If the defendant commits any crimes or if any of the defendant's
18 statements or testimony prove to be knowingly false, misleading, or
19 materially incomplete, or if the defendant otherwise violates this
20 plea agreement in any way, the government will no longer be bound by
21 its representations to the defendant concerning the limits on
22 criminal prosecution and sentencing as set forth herein.  The
23 determination whether the defendant has violated the plea agreement
24 will be under a probable cause standard.  If the defendant violates
25 the plea agreement, he shall thereafter be subject to prosecution for
26 any federal criminal violation of which the government has knowledge,
27 including but not limited to perjury, false statements, and
28 obstruction of justice.  Because disclosures pursuant to this plea

agreement will constitute a waiver of the Fifth Amendment privilege against compulsory self-incrimination, any such prosecution may be premised on statements and/or information provided by the defendant. Moreover, any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.  The defendant agrees to waive all defenses based on the statute of limitations or delay of prosecution with respect to any prosecutions that are not time-barred as of the date of this plea agreement.

If it is determined that the defendant has violated any provision of this plea agreement or if the defendant successfully moves to withdraw his plea: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.  By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

After the defendant pleads guilty, the defendant and his attorney agree that the government and any law enforcement personnel

may interview the defendant at any time and that they can do so without the defendant's attorney present.

### III.

### THE GOVERNMENT'S OBLIGATIONS

**A.   Recommendations:**

    **1.   Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under § 3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G. § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

    **2.   Recommended Sentence:** Pursuant to U.S.S.G. § 5K1.1 - Substantial Assistance to the Government, the government will recommend a reduction in the sentence of not more than fifty (50) percent of the applicable guideline sentence should the defendant fully satisfy all the terms and conditions of his cooperation Agreement with the government as set forth previously in II, paragraph D - "Agreement to Cooperate." The defendant is not precluded from receiving a further reduction in his sentence for substantial cooperation in other criminal cases in which he was not a participant and is not the subject of this Indictment. The defendant understands and agrees that the government shall have the sole

discretion to determine the amount of reduction made pursuant to U.S.S.G. § 5K1.1. If the defendant, however, fails to fulfill his obligations under "Agreement to Cooperate," the government may request the Court to set aside his plea agreement and prosecute him on the charge contained in the Indictment.

### IV.

### ELEMENTS OF THE OFFENSES

**A. Elements of the Offenses:** At a trial, the government would have to prove beyond a reasonable doubt the following elements of the following offense to which the defendant is pleading guilty:

<u>COUNT SEVEN</u>:  18 U.S.C. § 922(a)(1)(A) - Engaging in the Business of Dealing in Firearms Without a License.

The government must prove:

First, beginning no later than on or about March 2008, and continuing thereafter up to and including on or about November 2011, the defendant was not licensed to engage in the business of dealing in firearms as required by Title 18, United States Code, Section 923;

Second, during a sufficient portion of that time period, the defendant did engage in the business of dealing in firearms as an unlicensed firearms dealer; and

Third, in the course of such business, the defendant did receive firearms that had been shipped and transported in interstate and foreign commerce.

### V.

### MAXIMUM SENTENCE

**A. Maximum Penalties:** The maximum sentence which the Court can impose on Count Seven is no more than five (5) years in prison, a period of supervised release of three (3) years, a fine of $250,000

and a special assessment of $100. In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

**B.   Violations of Supervised Release**: The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to two (2) additional years in prison.

## VI.

### SENTENCING DETERMINATION

**A.   Statutory Authority**: The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 543 U.S. 220 (2005)) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## VII.

## WAIVERS

**A. Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B. Waiver of Appeal and Collateral Attack:** The defendant understands that the law gives him a right to appeal his conviction and sentence. He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case. ~~unless the sentence exceeds the statutory maximum for the offense~~. [handwritten initials]

Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence. He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

If the defendant ever attempts to vacate his plea, dismiss the underlying charges, or reduce or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which he plead guilty; (2) to reinstate any counts that may be dismissed pursuant to this Plea Agreement; and (3) to file any new charges that would otherwise be barred by this Plea Agreement. The decision to

pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

**C. Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including, without limitation, any charges to be dismissed pursuant to this Plea Agreement and any charges previously dismissed).

### VIII.

### ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

**THIS SPACE LEFT BLANK.**

## IX.

## APPROVALS AND SIGNATURES

**A. Defense Counsel:** I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

DATED: 8-28-12

BRADLEY WISHEK, Esq.
Attorney for Defendant

**B. Defendant:** I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines and the sentencing factors pursuant to 18 U.S.C. § 3553, et seq., that may apply to my case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. In addition, no one has threatened or forced me in any way to enter into this Plea Agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: 8-28-12

THOMAS LU
Defendant

**C. Attorney for United States:** I accept and agree to this Plea Agreement on behalf of the government.

BENJAMIN B. WAGNER
United States Attorney

DATED: August 28, 2012      By: 
WILLIAM S. WONG
MICHAEL D. ANDERSON
Assistant U.S. Attorneys

**EXHIBIT A**
**Factual Basis for Plea**

This Factual Basis does not include each and every individual, event, or item of evidence known to defendant LU or to the government. Instead, it is a summary of facts highlighting the facts sufficient for a guilty plea under Rule 11. Some facts and events have specifically not been included in this Factual Basis because they are not necessary for the Court to determine that there is a factual basis for this guilty plea.

**COUNT SEVEN - Engaging in the Business of Dealing in Firearms Without a License**

Thomas LU has been identified as a Sacramento County Sheriff's Deputy. Per the Sacramento County Known Person Files (KPF), LU was identified as an Asian male, 5'7, approximately 165 pounds, black hair and brown eyes.

A query of AFS (Automated Firearms System) indicates that LU has obtained 34 (handguns) firearms since 2008. Twenty-seven of the 34 firearms were off roster firearms. LU has private party transferred a total of 23 firearms. Eighteen were private party transferred within one year of the initial purchase.

DROS records show that 29 of the 34 firearms obtained by LU were transferred to him through Snellings' Firearms.

ATF Area Supervisor for Industry Operations, Roger Root reviewed ATF records and concluded that LU does not possess a Federal Firearms License.

**Count Seven**

**August 11, 2011- UC Meeting With LU**

On August 9, 2011, TFO Halstead, acting in an undercover capacity on behalf of UC #1 on the CalGuns website arranged a firearms purchase with "Tom." McGOWAN operating under the screen name "dldeguz" told TFO Halstead that his friend "Tom" had a Tec DC9 and a MasterPiece Arms, .45 caliber pistol, for sale for $500 each. McGOWAN sent a picture via text message of the firearms from his cell phone to UC #1's cell phone. McGOWAN also provided "Tom's" phone number. UC #1 verified the phone number by calling it the day of the firearms purchase and speaking to "Tom" directly.

On August 11, 2011, UC #1 met Thomas LU in the River City Gun Exchange parking lot. Similar to the meetings with McGOWAN, UC #1 walked over to LU'S vehicle and was able to view/manipulate the firearms. UC #1 purchased three off roster firearms which include a MasterPiece Arms, MPA10, .45 caliber pistol, serial number A0494, for $450, a Vector Arms, HR4332, 9 millimeter pistol, serial number 507186, for $1400, and a Intratec, Tec-dc9, 9 millimeter pistol, serial number D062624, for $450 from LU, for a total of $2300. UC #1 negotiated $100 off the initial asking price of the Tec DC9 and

MasterPiece Arms, .45 caliber handgun, for sale for $500 each.

During the meeting, LU explained to UC #1 that several of the high capacity magazines had a wooden peg inserted in the magazine. The wooden peg is inserted in the magazine so the magazine could accept only 10 rounds of ammunition. However, LU told UC #1 that UC #1 can simply take the magazine apart and take out the wooden peg. LU continued to instruct to UC #1 how to circumvent the California "Assault Weapons Act" in regards to possessing high capacity magazines. LU told UC #1 that if the police asked him how he came into possession of the high capacity magazines, he needed to say: "I owned the magazines way before the ban and shit." Furthermore, LU informed UC #1: "they can't check."

The selling, lending and/or giving of a high capacity magazine is a felony violation of the California Penal Code Section 12020 (Unlawful carrying and Possession of Weapons). A high capacity magazine is a magazine capable of holding more than 10 rounds of ammunition. The condition in which LU transferred the high capacity magazines to UC #1 is a felony violation of California Penal Code section 12020 because the magazines were not permanently modified to hold 10 rounds or less.

During the meeting, UC #1 asked LU if he was on www.CalGuns.net. LU stated that he was on www.CalGuns.net under screen name "Teabag." LU stated that he had some other guns he wanted to sell. Specifically, LU indicated that he had "Norinco AKs" for sale.

While filling out the private party transfer paperwork, LU provided his California identification card to the employee at River City Gun Exchange. The identification card stated his name was Thomas LU. When the transfer paperwork was complete, UC #1 and LU exited the River City Gun Exchange. LU informed UC #1 that he had a few more firearms in his vehicle. LU informed UC #1 that he had a Mossberg shotgun and another Uzi. UC #1 asked if the firearms were online. LU indicated that they weren't online because you can't put too much stuff online.

### August 26, 2011-Purchase of Two Off Roster Firearms From LU

On August 16, 2011, TFO Halstead, acting in an undercover capacity began conversing with LU on the CalGuns website on behalf of UC #1. LU has an account with the screen name "Teabag" (which he identified as his screen name on the August 11 meeting). TFO Halstead expressed interest in purchasing an off roster Lancaster AK pistol (manufactured by Nodan Spud LLC) and an off roster Kel-Tec PLR 16 pistol. LU requested UC #1's private email account so that he could email photos, a list of 6 firearms and the corresponding sale prices that he had for sale. LU sent an email to UC #1 from an email account titled sac_thuq4u@yahoo.com on August 22, 2011, with the above information.

///

On August 26, 2011, UC #1 met with LU at the River City Gun Exchange to purchase a Nodac Spud, LLC, Model NDS-3, 7.62 caliber, serial number M006659, and a Kel Tec, PLR16, .223 caliber pistol, serial number P4Y17, for $1550 which was videotaped/recorded.  LU led UC #1 to his vehicle to show UC #1 the firearms. LU was driving a white, 4-door, Lexus sedan.  A query through DMV revealed that the 4-door, Lexus sedan, is registered to LU.  LU opened the trunk of the vehicle, which contained boxes and firearm cases.  UC #1 successfully purchased the above listed firearms from LU.

LU provided a few other firearms for UC #1 to review while they were still at his vehicle. LU provided UC #1 with a GSG5 pistol, a Norinco Uzi pistol with a wooden stock, and an AK-47 style rifle.  UC #1 manipulated the action on each firearm and reviewed other features such as manufacturer markings and the bullet buttons. A bullet button is a magazine locking device.  UC #1 ultimately told LU he would check to see if he knew anyone interested in the other firearms.

While filling out the transfer documents at the River City Gun Exchange, UC #1 overheard an employee of the gun store ask LU if he had recently received the Lancaster (manufactured by Nodac Spud, LLC) pistol. UC #1 observed the Lancaster pistol in a postal box. LU indicated that he had recently received the firearm. Additionally, LU indicated the firearm was delivered in the same postal box. UC #1 asked if LU bought the rifle online. LU responded affirmatively.

### September 7, 2011 - Meeting With LU

On September 6, 2011, TFO Halstead acting in an undercover capacity on behalf of UC #1 conversed with LU via email (Sac_thug4u@yahoo.com) regarding the purchase of four firearms (see attachment C for email).  LU stated that he had the following firearms for sale: Interdynamics KG-9, 9 millimeter pistol for $1,500 (off roster); Kel Tec PF-9 pistol for $400 (off roster); Intratec, TECDC 9, 9 millimeter pistol, serial number D029008, for $500 (off roster); and a Norinco, Model 320, 9 millimeter rifle serial number A10709, for $700.  TFO Halstead told LU that he was interested in purchasing the four firearms for $3100.  The meeting was set up for September 7, 2011, at River City Gun Exchange.

On September 7, 2011, UC #1 and LU met in the parking of the River City Gun Exchange, which was videotaped/recorded.  UC #1 and LU walked over to LU's vehicle, a white Lexus sedan, to see the firearms LU would be selling.  UC #1 observed LU open his trunk, which contained cardboard boxes and hard case firearm containers. UC #1 observed that the firearms appeared consistent with the photographs of the firearms listed in LU's email.  In regard to the KG-9 pistol, LU told UC #1 that the firearm could easily be converted to an automatic firearm by altering a piece of metal in the firearm. Furthermore, LU told UC#1 that because of the relative ease at which the firearms could be converted, the ATF directed the manufacturer to stop making the firearm in this manner.

///

In addition to showing the firearms to UC #1, LU provided UC #1 with high capacity magazines for each of the firearms. LU informed UC #1 that he had inserted a wood peg in the high capacity magazines thereby restricting the ability to insert more than the legal amount of ammunition in a magazine under California guidelines. LU has used this method of rendering large capacity magazines legal in the past. However, LU told UC #1: "it's up to you what you want to do after that."

On this occasion, LU suggested that he and UC #1 make the money transfer inside of his vehicle. UC #1 negotiated a deal from the initial $3100 asking price to the purchase price of $3000. LU agreed on a purchase price of $3000 for all four firearms. Following the money exchange in the vehicle, LU and UC #1 entered River City Gun Exchange and filled out the private party transfer paperwork.

### Suspicious Firearms Transactions Made by LU

### A. Multiple Purchases on Same Date

On numerous occasions, Deputy Thomas LU has purchased multiple handguns on the same day. People engaged in the business of dealing firearms or trafficking firearms will often purchase multiple firearms at once. California law prohibits a person from buying more than one handgun from a FFL within any 30 day period. However, peace officers in California are exempt from the law and therefore can purchase as many handguns as they wish within a 30 day period. A review of the DROS and AFS records show the following multiple handgun sales made by LU:

November 22nd, 2010
- MasterPiece Arms, model MPA30 (off roster handgun)
- Taurus, model Raging Bull (off roster handgun)

October 18th, 2010
- Intratec, model DC-9 (off roster handgun)
- Intratec, model DC-9 (off roster handgun)

October 4th, 2010
- MasterPiece Arms, model MPA380 (off roster handgun)
- DSA, model TP9US (off roster handgun)

September 23rd, 2010
- Interdynamic, model KG9 (off roster handgun)
- Kel Tec, model PF9 (off roster handgun)

September 2nd, 2010
- IMI, model Micro Desert Eagle (off roster handgun)
- Masterpiece Arms, model MP10 (off roster handgun)
- Intratec, model Tec-DC9 (off roster handgun)

August 12th, 2010

- IMI, model Micro Desert Eagle (off roster handgun)
- Kel Tec, model P3AT (off roster handgun)
- Kel Tec, model PF9 (off roster handgun)

July 22nd, 2010

- Interdynamic, model KG99 (off roster handgun)
- Intratec, model Tec-DC9 (off roster handgun)

**B.** <u>Multiple Purchases of Same Make, Model, and Caliber</u>

Deputy Thomas LU has also purchased multiple firearms that are the same make, model and caliber. People engaged in the business of selling or trafficking firearms often will purchase multiple firearms of the same make, model and caliber. Below is a summary of the transactions:

<u>Norinco, 1911A1</u>

LU purchased three Norinco, model 1911A1 handguns from Snellings' Firearms. He purchased them on the following dates: 08-05-2010, 08-14-2010 and 10-07-2010. LU private party transferred the handgun he purchased on 10-07-2010 to another person on 07-28-2011.

<u>IMI, Desert Eagle</u>

LU purchased two IMI/Magnum Research, Desert Eagle, .50 caliber handguns. He purchased one from Snellings' Firearms on 12-02-2010 (gold in color) and later private party transferred it to another person on 08-17-2011. LU purchased a second IMI, Desert Eagle, .50 caliber handgun on 09-03-2011 from Personal Defense Weapons.

<u>IMI, Micro Desert Eagle</u>

LU purchased three Micro Desert Eagles, .380 caliber handguns from Snellings' Firearms. LU purchased one on 07-09-2009 and later private party transferred it to another person on 07-29-2011. LU purchased the second one on 08-12-2010 and later private party transferred it to another person on 09-03-2011. LU purchased the third one on 09-02-2010 and later private party transferred it to another person on 03-21-2011.

<u>Kel Tec, P3AT</u>

LU purchased two Kel Tec, P3AT handguns, one from Snellings' Firearms on 08-12-2010 and one from River City Gun Exchange on 11-04-2008. The firearm he purchased on 11-04-2008 was later private party transferred to another person on 07-31-2010.

<u>Kel Tec, PF9</u>

LU purchased two Kel Tec, PF9 handguns from Snellings' Firearms.

15

He purchased one on 08-12-2010 and later private party transferred it to another person on 03-21-2011. He purchased the second one on 09-23-2010 which he sold and private party transferred to UC #1 on 09-07-2011.

### Intratec, Tec-DC9

LU purchased six Intratec, TEC-DC9 handguns from Snellings' Firearms. LU has private party transferred four of the six handguns after he purchased them.

LU purchased one of the handguns on 05-20-2010 and he later private party transferred it to another person on 04-23-2011.

LU purchased the second handgun on 06-07-2010 and he later sold it to UC #1 on 09-07-2011.

LU purchased the third handgun on 07-22-2010 and the fourth handgun 09-02-2010.

LU purchased the fifth and sixth handguns on 10-18-2010. LU sold one of them to UC #1 on 08-11-2011. He private party transferred the other handgun to another person on 04-23-2011.

On 04-23-2012, defendant Thomas LU and his counsel, Brad Wishek, met at the U.S. Attorney's Office in order to give a proffer. In summary, LU admitted selling approximately 25 firearms over the past few years. LU acknowledged that the majority of the firearms were off roster firearms. LU sold the firearms for at least $12,000 and he averaged a profit margin of $100-$150 per firearm. LU stated that he made more profit off of the Desert Eagle, .50 caliber handguns than any other firearm that he had in his inventory. LU also stated that on at least one occasion, LU had to admonish McGOWAN to be careful on how quickly McGOWAN was selling the firearms after he bought them to avoid suspicion.

I have reviewed the entire factual basis in Exhibit A above. I stipulate that a sufficient basis exists to find beyond a reasonable doubt that I violated 18 U.S.C. § 922(a)(1)(A).

DATED: 8-28-12                    _____
                                  THOMAS LU
                                  Defendant