1  Donald E.J. Kilmer, Jr., (SBN: 179986)
   LAW OFFICES OF DONALD KILMER
2  A Professional Corporation
   1645 Willow Street, Suite 150
3  San Jose, California 95125
   Telephone: (408) 264-8489
4  Facsimile:  (408) 264-8487
   E-Mail: Don@DKLawOffice.com
5
   Attorney for Defendant:
6  ULYSSES SIMPSON GRANT EARLY

7

8
                     UNITED STATES DISTRICT COURT
9                    EASTERN DISTRICT OF CALIFORNIA
                     501 "I" STREET, SACRAMENTO, CA 95814
10
                                          CASE NO.:   2:12-CR-00207 LKK
11 UNITED STATES OF AMERICA,
                                          NOTICE OF MOTION, and
12              Plaintiff,                MEMORANDUM OF POINTS AND
                                          AUTHORITIES IN SUPPORT OF
13        v.                              DEFENDANT ULYSSES SIMPSON
                                          GRANT EARLY, IV's MOTION TO
14                                        DISMISS – VINDICTIVE/SELECTIVE
   RYAN McGOWAN, ROBERT                   PROSECUTION
15 SNELLING, ULYSSES SIMPSON              [Fed Rule of Crim Pr 12]
   GRANT EARLY IV, and THOMAS
16 LU,                                    Date:      October 31, 2013
                                          Time:      9:30 a.m.
17              Defendants.               Judge:     Troy L. Nunley (TLN)
                                          Courtroom: 2, 15th Floor
18

19

20     Please take NOTICE that at the dates, times and places indicated herein, the

21 Defendant ULYSSES SIMPSON GRANT EARLY, IV will move this Court for an

22 order dismissing this case.  This motion is based on the record in this matter,

23 judicially noticeable facts, the concurrently filed declaration of counsel and the

24 attached Memorandum of Points and Authorities.

25     Authority for this motion is found in the Federal Rules of Criminal

26 Procedure, relevant case law, federal and state statutory law and the Local Rules of

27 the Eastern District of California.

28

# INTRODUCTION

## Preliminary Facts

Defendant EARLY seeks dismissal from this case under Federal Rule of Criminal Procedure 12(b) as the indictment fails to state an offense.  Assuming that the government will be heard to complain that these pretrial motions are not being heard within 21 days of arraignment pursuant to Local Rule 430.1(c), Defendant would seek an order from the Court that good cause exists to waive this rule in this case for the following reasons:

    a.    There is no prejudice to the government as they were put on notice that this motion would be filed.  (See footnote 2 of EARLY's Motion to Compel, Doc # 64.)

    b.    Defendant EARLY was diligent in filing pre-trial motions for discovery. (Docket Entries #: 64, 65, 67, 79, 83, various dates)

    c.    The case was declared complex and the government was ordered to produce additional discovery in this case as late as June 14, 2013. (Docket Entry # 85, 05/23/2013)

    d.    Thus the defendant(s) in this case risked having the indictment merely amended if they filed a Rule 12 motion without all of the government's discovery being disclosed.

    e.    Defendant EARLY subsequently received additional discovery on April 19, 2013 and again on July 3, 2013.

Defendant EARLY has already filed notices – pursuant to Federal Rule of Criminal Procedure 12.3 – that he reserves the right to make the following defenses during pre-trial motions and trial itself (Docket Entry #66, 02/12/2013):

    1.    Entrapment by Estoppel.
    2.    Vindictive Prosecution.
    3.    Selective Prosecution.

**STATEMENT OF FACTS**

1. Since January 1, 2001, California statutory law and various administrative regulations have created a roster of "Safe Handguns." See: California Penal Code §§ 31900 - 32110 inclusive. California law makes it a crime for any person to manufacture, import or offer for retail sale any firearm that is not listed on the state's roster of "Safe Handguns."[1] There are exceptions to this statutory scheme. Relevant to this case are:

    a.  The sale, loan or transfer of any firearm pursuant to California Penal Code § 28050. (Sales between private parties.) Penal Code § 32110(a).

    b.  The sale or purchase of any firearm to any sworn members of any police department or sheriff's office. California Penal Code § 32000(b)(4).

2. The Indictment (Doc #1) filed on May 31, 2012 references this mechanism for non-law-enforcement persons to acquire off-roster firearms ¶ 4:

    > Pursuant to State law, certain firearms known as roster" firearms are not on the approved list of firearms and may not be offered for sale to the public as a new firearm by FFLs in California, but may only be purchased new by sworn law enforcement officers. Such firearms may later be lawfully sold by a law enforcement officer to the public in a "private party" transaction conducted through an FFL.

3. On February 24, 2012 California Assemblyman Dickinson introduced AB 2640 for the purpose of amending Penal Code § 32000(b)(4) so that any firearm that is not on the roster of "Safe Handguns" that is purchased by a sworn peace officer, could not subsequently be sold any person not also exempted under § 32000(b)(4). (i.e., also a sworn peace officer) A copy of the bill as amended in Assembly on April 9, 2012 is attached to the Declaration of Counsel as **Exhibit A**.

---

[1] The roster itself is wholly arbitrary and is the subject of a civil action challenging the this statutory scheme here in the Eastern District. *Pena, et al., v. Lindley*, 2:09-CV-01185 KJM-CKD. Dispositive motions are set for Nov. 22, 2013.

4.   As noted above the Indictment (Doc #1) was filed on May 31, 2012.

5.   On September 28, 2012 Governor Brown vetoed AB 2640.

6.   Therefore at all relevant times, as admitted in ¶ 4 of the Indictment, it is perfectly legal for a sworn peace officer to purchase an "off-roster" firearm and subsequently sell it to someone who is not a sworn peace officer. It goes without saying that any subsequent sale must comply with federal and state law for private party firearms sales. (i.e., use of an FFL, background check, waiting period, proof of safe-storage, etc...)

7.   Defendant EARLY is charged with a single count (# 6) of Conspiracy to Make a False Statement With Respect to a Firearm Record. [Doc #1, page 9]

8.   The Indictment alleges that an unindicted co-conspirator (C.K.) who was a Roseville Police Officer bought an "off-roster" firearm on April 29, 2010 and that the transaction was conducted by a federally licensed firearm dealer. This transaction is lawful under California Penal Code ¶ 32000(b)(4).

9.   The Indictment further alleges that the Roseville Police Officer subsequently sold the same firearm to Defendant EARLY on May 27, 2010 in a private party transaction that is lawful under Penal Code §§ 28050 and 32110(a).

10.  The gravamen of the conspiracy charge is that the Roseville (sworn) peace officer (C.K.), the FFL (co-defendant SNELLINGS) and Defendant EARLY entered into an agreement to commit the unlawful act of making a false statement in connection with a firearm purchase in violation of 18 U.S.C. § 924(a)(1)(A), by having the sworn peace officer (C.K.) make a false statement in response to Question 11.a., on ATF Form 4473 (5300.9). See **Exhibit B** attached to declaration of counsel.

11.  In addition to an ATF Form 4473, the State of California requires a concurrent form for its records called a Dealer Record of Sale. (DROS) See California Penal Code §§ 28100 - 28250.

////

12. The government has now produced, the ATF Form 4473s from the April 29, 2010 and the May 27, 2010 transactions and both of the California DROS from those transfers.

13. These documents are evidence that both transactions complied with federal and state law and that the paperwork was complete and truthful and that all background checks and waiting periods were complied with.

14. The snare used to manufacture the conspiracy charge against EARLY is based on the theory that someone (C.K.) who intends to resell an object later, is not a "transferee/buyer" at the time of initial acquisition.[2] In other words:

   a. Even though California substantive law permits exactly the kind of transaction described in Count Six of the Indictment,

   b. Even though the California legislature sought to close this "loop-hole" with legislation in the 2012 legislative session,

   c. Even though the Governor of California vetoed that bill after this case was filed, thus substantively ratifying this conduct in Count Six as legal under California law,

   d. Even though the U.S. Government admits in ¶ 4 of its Indictment that this series of transactions is lawful,

   e. Even though ATF Form 4473 offers a false choice to the "transferee/buyer" in question 11.a., and

   f. Even though these "co-conspirators" left a paper-trail that no self-respecting swindler would ever contemplate,

   g. That somehow it is appropriate to charge EARLY with a felony for what amounts to – at best – a erroneous legal conclusion about the definition of "transferee/buyer."

---

[2] The government has declined to charge C.K. with engaging in the Business of Dealing in Firearms Without a License [18 U.S.C. § 922(a)(1)(A)]. Count One of the Indictment makes that charge against Co-Defendant RYAN McGOWAN.

15. There are other infirmities with the government's theory of the case that are set forth on the ATF From 4473 itself:

   a. At the top of the form is a warning that says:

   **WARNING: You may not receive a firearm if prohibited by Federal or State law.  This information you provide will be used to determine whether you are prohibited under law from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. ¶¶ 921 *et seq.*, are punishable by up to 10 years imprisonment and/or up to a $250,000 fine.**

   But the transaction contemplated by Count Six is lawful under federal and state law and the indictment admits exactly that.

   b. ¶ 2 of Count Six of the Indictment (Doc #1) falsely quotes the 4473.

      i. From the Indictment: "Are you the actual buyer of this firearm(s) listed on the form?"

      ii. But ATF Form 4473 itself asks: "Are you the actual transferee/buyer of the firearm(s) listed on this form?" (Underlined for emphasis.)

   This raises a reasonable question about whether the conjunctive term "transferee" broadens the definition of buyer.  And this is assuming that the extraordinarily narrow definition of "buyer" implied by the indictment is constitutionally, statutorily and administratively sound.

   c. Perhaps the government can be forgiven their mis-statement in the indictment because page 2 of 6 of the ATF Form 4473 makes the same mistake substituting "buyer" for "transferee/buyer" in the verification above signature block #16 which itself is titled: "Transferee's/Buyer's Signature."

   d. Furthermore on page 3 of 6 under the title: **Purpose of Form** the government reiterates that the 4473 is to insure the lawfulness of the transaction.  In other words, its purpose is not to ensnare and

|   |   |   |
|---|---|---|
| 1 | | criminalize transactions by ordinary persons through the use of hyper- |
| 2 | | technical legal definitions.  Interestingly, paragraph three (3) under |
| 3 | | this heading permits any person to make a correction, even after the |
| 4 | | firearm has been transferred, to the Form 4473 when the inaccuracy is |
| 5 | | discovered.  No statute of limitations for corrections is contemplated by |
| 6 | | the form.  If the government conceded in their own indictment that the |
| 7 | | transaction described in Count 6 is legal under federal and state law, |
| 8 | | but that "technically" a term was misunderstood, wouldn't the more |
| 9 | | just remedy be to unwind the transaction and correct the form rather |
| 10 | | than charge a felony? |
| 11 | e. | Finally, there is on page 4 of 6 a wholly incomplete, misleading and |
| 12 | | irrational definition of "Actual Transferee/Buyer." |
| 13 | | i.  In the present case, each and every time the object firearm |
| 14 | | changed hands we have a two-party transaction, and the federal |
| 15 | | and state paperwork, background checks and waiting periods |
| 16 | | were all complied with. |
| 17 | | ii.  Yet, in its explanation of what constitutes a permissible ***three-*** |
| 18 | | ***party transaction***, The United States Government contends |
| 19 | | that it is permissible for Mr. Brown to buy a firearm from the |
| 20 | | FFL with his own money and then make a gift of the firearm to |
| 21 | | Mr. Black, and thus lawfully answer "**YES**" to this question, |
| 22 | | provided Mr. Brown has no reason or cause be believe Mr. Black |
| 23 | | is prohibited under 18 U.S.C. § 922(g), (n) or (x).[3] |

---

[3] In other words, Mr. Brown must pass an F.B.I. background check to get the gun from the FFL, but no background check is necessary for the third party (gift) beneficiary Mr. Black so long as Mr. Brown "believes" that Mr. Black is not prohibited.  If the government's interest in requiring these forms is to make sure there is a record of the transaction and a means of insuring lawful possession (i.e., the recipient of the gun is not a felon, mentally ill, fugitive, etc..), then this informal legal "advice" on the back of the 4473 form isn't even rational.

16. The United States Government makes other statements to the gun-buying public that are contrary to the theory of liability advanced by this indictment. The United States Department of Justice, Bureau of Alcohol, Tabacco, Firearms and Explosives, Office of Enforcement Programs and Services, Firearms Program Division, puts out a publication: "FEDERAL FIREARMS REGULATIONS REFERENCE GUIDE, ATF Publication 5300.4, Revised September 2005. " The shorthand title is: "The White Book." [http://www.atf.gov/files/publications/download/p/atf-p-5300-4.pdf] Among other references to federal law, The White Book contains letter rulings and FAQs relating to firearms laws and various permutations of firearm transactions. Relevant to this case, from page 195 of that publication (attached as **Exhibit C** to the Declaration of Counsel):

   a. **(P60) An organization without a firearms license wishes to acquire a firearm from a licensee for the purpose of raffling the firearm at an event. How does the licensee comply with the Brady law?**
   b. [Answer] The licensee must comply with the Brady law by conducting a NICS check on the transferee. If the licensee wishes to transfer the firearm to the organization, a representative of the organization must complete a Form 4473 and a NICS check must be conducted on that representative prior to the transfer of the firearm. Alternatively, if the licensee transfers the firearm directly to the winner of the raffle, the winner must complete a Form 4473 and a NICS check must be conducted on the raffle winner prior to the transfer. Please note, if the organization's practice of raffling firearms rises to the level of being engaged in the business of dealing in firearms, the organization must get its own Federal firearms license (and the examples below would not apply).
      i. Example 1: A licensee transfers a firearm to the organization sponsoring the raffle. The licensee must comply with the Brady Law by requiring a representative of the organization to complete the Form 4473 and undergo a NICS check. As indicated in the instructions on the Form 4473, when the buyer

of a firearm is a corporation, association, or other organization, an officer or other representative authorized to act on behalf of the organization must complete the form with his or her personal information and attach a written statement, executed under penalties of perjury, stating that the firearm is being acquired for the use of the organization and the name and address of the organization. Once the firearm had been transferred to the organization, the organization can subsequently transfer the firearm to the raffle winner without a Form 4473 being completed or a NICS check being conducted. This is because the organization is not an FFL. However, the organization cannot transfer the firearm to a person who is not a resident of the State where the raffle occurs and cannot knowingly transfer the firearm to a prohibited person.

  ii. Example 2: The licensee or his or her representative brings a firearm to the raffle so that the firearm can be displayed. After the raffle, the firearm is returned to the licensee's premises. The licensee must complete a Form 4473 for the transaction and must comply with the Brady Law prior to transferring the firearm to the winner of the raffle. If the firearm is a handgun, the winner of the raffle must be a resident of the State where the transfer takes place, or the firearm must be transferred through another FFL in the winner's State of residence. If the firearm is a rifle or shotgun, the FFL can lawfully transfer the firearm to the winner of the raffle as long as the transaction is over-the counter and complies with the laws applicable at the place of sale and the State where the transferee resides.

  iii. Example 3: If the raffle meets the definition of an "event" at which the licensee is allowed to conduct business pursuant to 27 CFR 478.100, the licensee may attend the event and transfer the firearm at the event to the winner of the raffle. As in Example 2, the FFL must complete a Form 4473 and comply with the Brady law and the interstate controls in transferring the firearm.

  iv. Please note, procedures used in Examples 2 and 3 ensure that the winner is not a prohibited person and that there is a record of the final recipient of the firearm in the raffle. [18 U.S.C. 922(t) and 922(a)(1)(A)]

1  In other words, the United State Government admits that its Form 4473 does
2  not cover all possible permutations of how guns are marketed and sold, and
3  therefore concedes that its definition of "buyer/transferee" is open (wide-open)
4  to interpretation.  The government's safety net for these circumstances is to
5  insure that the final recipient of the firearms is "not a prohibited person" and
6  "that there is a record of the final recipient of the firearm."  That is exactly
7  what is alleged in this case.  There is not an indictment's worth of difference
8  between the way the government alleges the transactions occurred in this
9  case and the way they can occur, with the government's blessings, in the
10 examples on the 4473 and in the White Book example at page 195.

11 17. Nor is this the only somewhat misleading information that the United States
12 Government puts out that conflicts with the government's theory of the
13 indictment. (i.e., that private party sales are somehow tainted with
14 conspiracies.)  Attached as **Exhibit D** to the Declaration of Counsel is an
15 "Open Letter To All Federal Firearms Licensees" dated January 16, 2013.  In
16 this letter the U.S. Department of Justice, Bureau of Alcohol, Tabacco,
17 Firearms and Explosives, encourages FFLs to facilitate private party
18 transfers between private sellers as long as the transactions comply with
19 federal and state law.

20 18. Finally, consider some additional implications of the government's theory of
21 Count #6 of the indictment:

22 > That because "C.K." had formed the intent, at the time he
>  signed the Form 4473, to later resell the firearm to
23 > EARLY; he somehow doesn't qualify as a
>  "buyer/transferee" and thus made a false statement in
24 > connection with the purchase of a firearm.

25 a. 18 U.S.C. § 921 *et seq.*, sets forth the statutory definitions to be used in
26    connection with Chapter 44 of Title 18.  Nowhere in those definitions is
27    the term "buyer/transferee" defined.  For that matter, neither are the
28    terms "buyer" or "transferee" defined as separate terms.

1   b.   The closest we get to a hint of the statutory definition of transferee is
2        at 18 U.S.C. § 922(t)(1)(C) which requires the transferor to verify the
3        identity of the transferee with a photo ID.
4   c.   Title 27 CFR Chapter II, Part 478 contains the administrative rules for
5        interpreting the congressional statute.  Subpart B sets forth the
6        definitions at § 478.11. (This is set forth in the White Book starting on
7        page 35.) Nowhere in that list of definitions is the term
8        "buyer/transferee" defined.  Nor for that matter, are the terms "buyer"
9        or "transferee" defined as separate terms.
10  d.   The closest the statutes and regulations come to identifying what
11       constitutes a "transferee" is under Title 27 CFR Chapter II, Part 479 –
12       Machine Guns, Destructive Devices, and Certain Other Firearms.  But
13       these are the regulations for interpreting Title 26 U.S.C. Chapter 53 of
14       the Internal Revenue Code otherwise known as the National Firearms
15       Act, which regulates – among other things – machine guns, sawed-off
16       shotguns and silencers.  The relevant part of that identification and/or
17       definition states that: "[A] certifying official has no information
18       indicating that the receipt or possession of the firearm would place the
19       transferee in violation of State or local law or that the transferee will
20       use the firearm for other than lawful purposes."  27 CFR § 479.85.
21  With the government's theory of the case against Defendant EARLY (not to
22  mention his liberty) riding on a definition of "buyer/transferee" – one would
23  think that the government could produce a statutory/regulatory definition of
24  the term that would give constitutionally significant notice of what is and is
25  not included in that definition.  Because with all the actions taken by the
26  parties (proper forms filled out, background checks performed, waiting
27  periods observed, etc...) being legal by the government's own admission, then
28  this case becomes a "thought crime" case.

1  19.   See Counsel's Declaration in Support of Motion to Compel for a sworn
2         statement and exhibits.  Briefly:
3         a.    Detective Tom Koontz (#76) is employed by the Sacramento County
4               Sheriff's Department.
5         b.    He questioned Defendant EARLY on or about November 3, 2011.
6         c.    He left a business card identifying himself as a special investigator
7               with the Sacramento County Sheriff's Office.  See **Exhibit E**.
8         d.    On or about November 8, 2011, Assistant U.S. Attorney William S.
9               Wong caused a Subpoena to Testify Before the Grand Jury to be issued
10              to Mr. EARLY.  The subpoena date and time was set for December 15,
11              2011 at 9:00 a.m. at 501 "I" Street in Sacramento.  **Exhibit F.**
12        e.    Mr. EARLY arrived at the date and time on the Subpoena with
13              Counsel.  (Donald Kilmer)
14        f.    Prior to that meeting EARLY's counsel contacted Assistant U.S.
15              Attorney William S. Wong and inquired about state and federal use
16              immunities.
17        g.    The inquiry about state use immunity was prompted by the fact that
18              Defendant EARLY was interviewed early by a Sacramento Sheriff's
19              Deputy.   Additionally, the United States Attorney's Office for the
20              Eastern District of California purports to participate in a program that
21              targets gun crime called: "Project Safe Neighborhood" which "promotes
22              partnerships among local, state and federal law enforcement agencies
23              and prosecutor's offices to target gun crime."  See **Exhibit G**.
24        h.    EARLY's counsel documented the substance of that contact in a
25              December 15, 2011 letter that was hand delivered to the AUSA on the
26              morning of December 15, 2011.  **Exhibit H**.
27        i.    Even after capitulating on state use immunity, and offering to testify
28              before the Grand Jury with only federal use immunity, Assistant

|   |   |   |
|---|---|---|
| 1 |   | United States Attorney William S. Wong informed Mr. EARLY and his |
| 2 |   | lawyer at the December 15, 2011 meeting that Mr. EARLY was now a |
| 3 |   | target of a criminal investigation. |
| 4 | j. | Mr. EARLY's home was subsequently searched and state criminal |
| 5 |   | charges were filed against him, in addition to the federal charges |
| 6 |   | herein. *People v. Early*, Case No.: 12 F 06812 charged EARLY with |
| 7 |   | one count of possession of an unregistered "Assault Weapon."  The |
| 8 |   | charge has nothing to do with Count Six of the federal indictment. |
| 9 |   | There was quite a bit of overlap on the investigating officers who have |
| 10 |   | executed (so far) two search warrants at Mr. EARLY's home.  This |
| 11 |   | state case was dismissed after the Defense prevailed on a Motion to |
| 12 |   | Suppress under Penal Code § 1538.5. |
| 13 | k. | As it turns out, Mr. EARLY's inquiry about <u>state</u> and federal use |
| 14 |   | immunity was not paranoid. |
| 15 | l. | A follow-up letter was sent to Assistant U.S. Attorney William Wong |
| 16 |   | on February 28, 2012 recapitulating the status of the case. **Exhibit I**. |
| 17 | m. | These facts make out a prima facie case of Vindictive Prosecution in |
| 18 |   | retaliation for EARLY exercising a constitutional right. |

19. 20. After EARLY was indicted in the federal action, he was contacted by a friend of his named George Singewald who is a sworn peace officer in a local law-enforcement agency.  Mr. Singewald is apparently friendly with Greg Halstead who is an investigating officer in this federal case who works for the Sacramento Police Department and is designated as ATF TFO in the reports and memoranda in this case.  Halstead is also an investigating officer in the State case: *People v. Early*. **Exhibit J**, sets out a series of text messages between EARLY and Mr. Singewald from before this case broke, with dates up through and including September 24, 2012.

   a. On August 20, 2012 at 9:11 p.m. there is a text message mentioning

1         "Greg."  This is ATF TFO Greg Halstead.

2    b.    ATF TFO Greg Halstead is mentioned again on September 5, 2012 at

3         12:45 p.m. and again at 4:25 p.m.

4    c.    ATF TFO Greg Halstead is mentioned again on September 14, 2012 at

5         5:41 p.m.

6    d.    ATF TFO Greg Halstead is mentioned again on September 24, 2012 at

7         10:45 a.m.

The entire series of text messages indicate, or at least imply, that government agents prosecuting this case may have been improperly interfering in the Attorney/Client relationship EARLY had with Mr. Kilmer by encouraging EARLY to change counsel in order to get a better deal with Mr. Wong of the U.S. Attorney's office. [Note: No allegation is made (at this time) that Mr. Wong was aware of this liaison.]

21. The discovery already produced in this matter indicated that dozens, if not scores of firearms were purchased by sworn peace officers and then sold in private party transfers to non-peace officers.  Yet only Mr. EARLY has been singled out for selective prosecution.

## ARGUMENT

22. This is essentially a place-holder motion to preserve EARLY's appellate rights on the denial of discovery on these issues in an order by the Magistrate Judge Edmund Brennan.  The magistrate declined to order the government to turn over material requested by the defense to make an adequate showing for this motion.  The government was directed to submit an order of the those proceedings, but has thus far failed to do so. (Docket Entry 83, April 9, 2013)

23. Nevertheless, with only the prima facie evidence he can produce through his own rescources, EARLY hereby requests an order dismissing this case under the alternative theories of vindictive or selective prosecution.

24. For Selective Prosecution, see generally: *United States v. Armstrong*, 517 U.S. 456 (1996); *United States v. Darif*, 446 F.3d 701 (7th Cir. 2006). Of all the grand jury witnesses who were subpoenaed, who also bought guns from law enforcement officers, only EARLY has been indicted. The fundamental right being impacted is EARLY's Second Amendment right to keep and bear arms and the chilling effect this prosecution will have on the general public.

25. The Due Process Clause protects defendants from vindictive treatment based on the exercise of a constitutional or statutory right. "Vindictiveness in this context means the desire to punish a person for exercising his fundamental rights." *United States v. Barner*, 441 F.3d 1310 (11th Cir. 2006) The constitutional right that EARLY sought to invoke that instigated this prosecution was his Fifth Amendment right to avoid giving sworn testimony against himself in the grand jury proceedings that could be used against him in state court proceedings; and his Sixth Amendment right to the Counsel of his choice. Only after EARLY made inquiries about, and then did not even insist on, immunity from state charges did the AUSA inform Mr. EARLY that he went (in a lightening flash) from being a witness to being a target.

26. Given the weakness of the case against EARLY (See concurrently filed Motion to Dismiss.), the AUSA's actions can only be described as vindictive.

## **CONCLUSION**

WHEREFORE, Defendant respectfully requests that this Court grant his request for a dismissal of this criminal action against him.

Respectfully Submitted on October 10, 2013,

　　/s/ Donald Kilmer

Donald Kilmer, Attorney for EARLY